UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 24-CR-457 (ABJ) |
| v. | : | |
| ERIC COUNCIL, JR., | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing and ask this Court to follow the terms of the plea agreement and precedent on the evaluation of the Guidelines, and sentence Eric Council, Jr. to 24 months of incarceration.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

A. **Offense Conduct**

The factual proffer to which Defendant Eric Council. Jr. agreed as part of his February 10, 2025, guilty plea establishes the following uncontested facts:

i.  **@SECGOV SIM Swap Conspiracy**

Beginning in and around at least January 2024, Eric Council, Jr. ("Defendant") and his co-conspirators conducted Subscriber Identity Model ("SIM") swaps by creating and using fraudulent identity documents to access victim social media accounts in order to commit further offenses. Statement of Offense, ECF Doc. 17, p.3. A SIM card is a chip that stores information identifying and authenticating a cell phone subscriber and connects a physical cell phone to a mobile carrier's cellular and data network. *Id.* In a SIM swap attack, a criminal actor fraudulently induces a mobile carrier to reassign a mobile phone number from a victim's SIM card to a SIM card telephone controlled by the criminal actor. *Id.* Members of the conspiracy then generate password

reset security authentication codes for the victim's online accounts that are sent to the telephone controlled by the criminal actor. *Id*. The fraud is completed when the conspirators share the security reset codes with one another to unlawfully access the victim's online accounts, such as social media and virtual currency accounts. *Id*. at 4.

On or about January 9, 2024, Defendant and his co-conspirators executed a SIM swap of the mobile phone account associated with the X account owned and operated by the Securities and Exchange Commission ("SEC") (@SECGov X Account) in order to gain unauthorized access to the account and generate fraudulent posts in the name and likeness of the SEC Chairman. *Id.*

A member of the conspiracy identified victim C.L., as an individual with authorized access to the telephone number linked to the @SECGov X Account. *Id.* at 4. Defendant was directed by a co-conspirator to perform a SIM swap for C.L.'s mobile phone account and received C.L.'s full name, what the co-conspirator believed to be the last four digitals of C.L.'s Social Security Number, and an identification card template with C.L.'s name and Defendant's image (the "C.L. driver's license"). *Id*.



*Screenshot of Messages Received by Council*

Using his portable identification card printer, Defendant printed the C.L. driver's license. *Id*. Defendant then traveled to an AT&T store in Huntsville, Alabama and provided false information to AT&T store staff, including the C.L. driver's license, to effectuate the SIM swap. *Id*.

3



*Council Inside of the AT&T Store Posing as C.L. on January 9, 2024*

Defendant then purchased a new iPhone from the Huntsville Apple store and inserted the C.L. SIM card in the iPhone. *Id*. at 4-5. A member of the conspiracy generated a password reset code for the @SECGov X Account, which was sent to the iPhone with the C.L. SIM card. *Id*. at 5. Using his personal phone, Defendant took a photo of the @SECGov X Account reset code and sent it to his co-conspirators. *Id*.

4



*Council Sending X Reset Code to a Co-Conspirator*

A few hours later, Defendant returned the iPhone to an Apple store in Birmingham, Alabama for cash. *Id.* Defendant received payment for the SIM swap through bitcoin and other virtual currencies. *Id.*

5



*Council Sending his BTC Address for Payment*

After gaining unauthorized access to the @SECGov X Account, a co-conspirator issued a fraudulent post on the Account in the name of the SEC Chairman, falsely announcing the SEC approval of bitcoin Exchange Traded Funds, causing the price of bitcoin to increase by more than $1,000 per bitcoin following the post. *Id.*



Fake ETF approval from hacked SEC account

After regaining control over the @SECGov X Account, the SEC confirmed that the announcement was unauthorized and the value of BTC decreased by more than $2,000 per bitcoin. *Id*.

On or about June 12, 2024, surveillance agents observed Defendant attempting to execute a SIM swap at an Apple store in Birmingham, Alabama, in the name of victim J.F. *Id*. at 6. On or about June 18, 2024, law enforcement executed a search warrant of Defendant's automobile and the Alabama residence where he was living. *Id.* Law enforcement recovered a fake identification card in the name of victim B.T. with Defendant's image and a portable identification printer. *Id*.



*Portable ID Printer Recovered from Council's Residence*



*Blank ID Cards Recovered from Council's Automobile*



*Additional Fake ID Recovered from Council's Automobile*

Pursuant to the search warrant, law enforcement's search of Defendant's laptop uncovered templates for fake identification cards and internet searches for "SECGOV hack," "telegram sim swap," "how can I know for sure if I am being investigated by the FBI" and "how long does it take to delete telegram account." *Id*. at 6. An additional search of Defendant's Telegram chats saved on his mobile phone included conversations with members of the conspiracy and additional SIM swap actors, instructions for SIM swaps, identification card templates, fake identification card templates with the names of victims D.N. and S.B. with Defendant's image, personal identifying information for J.F., and Defendant's virtual currency and payment information for co-conspirators to pay for his SIM swap services. *Id*. at 6-7.

 

*Two Additional Fake ID Documents Recovered from Council's Telegram Account*

Defendant admitted to law enforcement that from January to June 2024 he received approximately $50,000 for performing SIM swaps. *Id* at 7.

The FBI recovered additional evidence from a search warrant executed in Criminal Case Number 24-cr-38 (ACR) that further implicated Defendant in this SIM swap activity. From a device seized in that case, agents recovered Defendant's contact information stored with a biography section, including prices for SIM swaps both with and without SIM cards.



*Council Contact Information Saved on Phone in Criminal Case No. 24-cr-38*

**B. Procedural History**

On October 10, 2024, a federal grand jury returned an indictment charging Defendant with Conspiracy to Commit Aggravated Identity Theft (18 U.S.C. § 1028A) and Access Device Fraud (18 U.S.C. 1029(a)(1)), in violation 18 U.S.C. § 371. On February 10, 2025, Defendant pled guilty to the Indictment.

**C. Post Plea Hearing Conduct**

On or about February 16, 2025, the X account for Vx Underground, an organization that

11

claims to provide the largest collection of malware source code, samples, and papers online, posted a video statement, purportedly made by Defendant.



While Defendant acknowledged his role in the hack and referenced his discussions with law enforcement and guilty plea as steps towards accountability, he blamed the SEC's cybersecurity practices, claiming, "[t]he @SECGov Hack was an inside job" and "the SEC still hasn't taken full accountability for investor losses due to cyber security practices of a lonely 85-year-old with dementia." Defendant ends the video with a message where he continued to diminish his and his conspirators' culpability:[1]

---

[1] The full video will be transmitted to the Court as Attachment A and is currently accessible on X at https://x.com/vxunderground/status/1891220194980204705



## II.  LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id*. § 3553(a).

## III.  SENTENCING GUIDELINES

### A. Parties' Calculation of the Defendant's Guidelines

Pursuant to the Plea Agreement, the parties agreed that the following sections of the Sentencing Guidelines apply:

Count 1: 18 U.S.C. § 371, Object One (18 U.S.C. § 1028A)

| | | |
|---|---|---|
| U.S.S.G. § 2X1.1 | Conspiracy – Underlying Offense | |
| U.S.S.G. § 2B1.6 | Aggravated Identity Theft | N/A* |

*Per U.S.S.G. § 2B1.6, the Guidelines sentence is the statutory minimum, or twenty-four months.

Count 1: 18 U.S.C. § 371, Object Two (18 U.S.C. § 1029)

| | | |
|---|---|---|
| U.S.S.G. § 2X1.1 | Conspiracy – Underlying Offense | |
| U.S.S.G. § 2B1.6 | Access Device Fraud | 6 |
| U.S.S.G. § 2B1.1(b)(11) | Possession of Device-Making Equipment | +6 |
| U.S.S.G. § 2B1.1(b)(10) | Sophisticated Means | +2 |
| | Total: | 14 |

ECF No. 16 at 2-3.

Pursuant to U.S.S.G. § 2B1.6, Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) are inapplicable "because the guideline sentence for [Aggravated Identity Theft] is determined only by the relevant statute." § 2B1.6 n.3. Accordingly, Defendant's recommended Guidelines sentence is twenty-four months. *Id.*

**B. Probation Office's Calculation of the Defendant's Guidelines is Incorrect**

U.S.S.G. § 2X1.1 governs Guidelines calculations for conspiracy offenses. It states that the base level offense is "the base level from the guideline for the substantive offense." Application Note 2 states that substantive offense "means the offense that the defendant weas convicted of soliciting, attempting, or conspiring to commit."

The offense of conviction is conspiracy to commit aggravated identity theft in violation of 18 U.S.C. § 1028A and access device fraud in violation of 18 U.S.C. § 1029. The Probation Office applied the appropriate base offense level and special offense characteristics for the access device

14

fraud conduct but applied the incorrect base level offense for the aggravated identity theft. PSR ¶ 40-42.

The presentence investigation report correctly states that the first object of the conspiracy is a violation of 18 U.S.C. § 1028A. PSR ¶ 36. The following paragraph then changes the substantive offense and varies from the plea agreement, statement of offense, and parties' agreement, and the Court's analysis of the plea agreement and statement of offense when accepting the agreement, by stating "[t]he substantive offense of Count 1A is Identity Theft, 18 USC § 1028. The guideline applicable to the substantive offense is § 2B1.1." PSR ¶ 37. This is simply incorrect and these are two different statutes. The substantive offense of Count 1A, the object of the conspiracy as charged and agreed to during the plea agreement, is *Aggravated Identity Theft*, in violation of 18 U.S.C. § 1028A.

U.S.S.G. § 2B1.6 governs calculations for Aggravated Identity Theft. It states that the guideline sentence is the term of imprisonment required by statute. In this case, the term of imprisonment required by statute is twenty-four months. 18 U.S.C. § 1028A. Accordingly, as the parties negotiated, the guidelines range for this count of conviction is a *non-mandatory* sentencing range of twenty-four-months. The Court is free to vary from that range, but the range is expressly provided for in the sentencing guidelines.

The government's position is supported by the plain reading of the statute, along with case law. In *United States v. Ajelero*, 17-CR-546, 2022 WL 3212727 (E.D.N.Y. Aug. 9, 2022), the court ruled that "[t]he applicable guideline for 18 U.S.C. § 371 offenses is U.S.S.G. § 2X1.1(a), which defines the 'base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable

15

certainty.' The applicable Guideline for the substantive offense, Aggravated Identity Theft, is U.S.S.G. § 2B1.6, which states 'the guideline sentence is the term of imprisonment required by statute.' The applicable statute for Aggravated Identity Theft is 18 U.S.C. § 1028A, which sets forth a sentence of 'a term of imprisonment of two years.' Therefore, the Guidelines sentence for [a conspiracy to commit aggravated identity theft] is two years of imprisonment." *Ajelero,* at *4.

The presentence investigation report also decreases Defendant's offense level for Acceptance of Responsibility under U.S.S.G. § 3E1.1(a) and applies the Zero-Point Offenders adjustment pursuant to U.S.S.G. § 4C1.1. PSR ¶ 47-48. If U.S.S.G. § 2B1.6 is properly applied as the Guidelines section governing the calculation of the offense, the Guidelines note that Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) are inapplicable "because the guideline sentence for [Aggravated Identity Theft] is determined only by the relevant statute." § 2B1.6 n.3. The Chapters 3 and 4 adjustments for Acceptance of Responsibility and Zero-Point Offenders should be removed, consistent with the Guidelines Manual and the parties' agreement.

Defendant's guidelines range should therefore be the twenty-four months that appropriately follows the Indictment, plea agreement, statement of offense, and Sentencing Guidelines.

**IV.    ARGUMENT**

    **A.    The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense**

The circumstances of this offense are serious. SIM swapping crimes indiscriminately target victims throughout the United States for their financial holdings and personal information.

In 2023, the FBI's Internet Complaint Center ("IC3") received approximately 1,075 victim

16

complaints detailing SIM swap attacks totaling over $48 million in victim losses.[2]   SIM Swap attacks in 2024 decreased to 982 reported incidents with a total loss of $25 million.[3]

Defendant Council placed himself in the middle of SIM swapping activity by advertising his services on Telegram under his @easymunny username and listing prices for services. He engaged in what appears to be a continuous series of SIM swaps from before the January 2024 crime, all the way through to the June 2024 search warrant execution at his Alabama residence. When the FBI finally identified Defendant Council in Alabama, they quickly realized they were surveilling him while he attempted to perform additional SIM swaps. Defendant's Telegram account only maintained the previous two weeks' worth of messages, but even within this short period, the messages are filled with discussions of performing SIM swaps with co-conspirators believed to be located overseas. *See* Attachment B. The conversation captured in Attachment B shows Defendant and a co-conspirator casually discussing pricing and targets for SIM swaps, along with Defendant's supposed connection to telecommunication store employees.

In the case at hand, Defendant's co-conspirators targeted the SEC with the goal of manipulating Bitcoin prices worldwide. Either knowingly, or unknowingly, Defendant placed himself in the middle of this conspiracy through his actions. Important for the Court's consideration are Defendant's internet searches found on his computer. Not only was Defendant searching information such as variations on "how long does it take to delete a telegram accounts," and "warrant proof laptop," indicating security measures he was taking to avoid law enforcement detection, but he had also searched several variations of "SECGOV Hack" indicating that he knew

---

[2] https://www.ic3.gov/AnnualReport/Reports/2023_IC3Report.pdf
[3] https://www.ic3.gov/AnnualReport/Reports/2024_IC3Report.pdf

he performed the SIM swap that enabled the SEC intrusion and that he continued to commit SIM swap crimes well afterwards. To further illustrate this point, the government attaches another conversation from Defendant's Telegram account with an unknown individual named "Roman." Attachment C. On or about June 9, 2024, Defendant discusses "swapping the feds" and Roman tell him "SEC kinda crazy too." Roman goes on to say, "But it's good it wasn't crypto and they haven't found you yet and usually they would've by now if they wanted to look into it that hard," and Defendant replies "ur the last person I told that. That info gotta die with us."

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

This case deserves a guidelines range prison sentence. Defendant profited through a sophisticated fraud scheme involving fraudulently produced identification documents, a series of misrepresentations at telecommunication stores, and the transmission of password reset codes for victim online accounts to co-conspirators located in the United States and abroad. This conduct deserves a significant penalty. Additionally, considering how much is lost to SIM swap crimes on a yearly basis, general deterrence is necessary to demonstrate to other would-be fraudsters worldwide that SIM swaps are serious offenses and SIM swap actors will be held accountable for the full scope of their conduct.

### C. The History and Circumstances of the Defendant

By all accounts, Defendant had a stable childhood and a supportive household. PSR ¶ 59-61. He graduated high school and attended community college on a GI Bill. PSR ¶ 85-86. Defendant worked at a secure government facility from March 2021 to June 2023 earning $2,100 per month until he was fired for "performance" reasons. PSR ¶ 90. Defendant had opportunities

that many coming before this Court did not have and he squandered them for quick and "easy" money by committing SIM swaps.

## V. CONCLUSION

To address the gravity of his offense and sufficiently deter others from similar acts, the government respectfully requests that the Court sentence Eric Council, Jr. to 24 months of incarceration, following the guidelines negotiated as part of the plea agreement, supported by caselaw and the Statement of Offense.

                                Respectfully submitted,

                                EDWARD MARTIN JR.
United States Attorney
D.C. Bar No. 481866

BY:   */s/ Kevin L. Rosenberg*
Kevin Rosenberg, Ohio Bar 0081448
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 809-5351
Kevin.Rosenberg@usdoj.gov

*/s/ Ashley R. Pungello*
Ashley R. Pungello
D.C. Bar No. 1735733
Trial Attorney
Computer Crime & Intellectual Property Section
U.S. Department of Justice
(202) 514-2842